Hear ye, hear ye. This Honorable Appellate Court for the Second District is now open. The Honorable Justice Joseph E. Burkett presiding, along with Justice Donald C. Hudson and Justice Liam C. Brennan. The case is number 2-19-0551. Breanna Fay as Special Administrator of the Estate of David Sheck, Plaintiff Appellant, versus Fifty K Corp et al., Defendants Appellees. Arguing for the Appellant, Brad Skafish. Arguing for the Appellees, Daniel C. Lytle. Good morning. This is Justice Burkett speaking. The Court wants to thank the parties for agreeing to conduct oral arguments remotely today. Before we begin, let me make a few comments about our format. Just as if we were in the Elgin Courthouse, you will each be given your regular allotted time. When you are not arguing, as our Clerk Jeff Kaplan said, please mute your phone. Each party will have 15 minutes for your main argument and the Appellant will have 5 minutes for rebuttal. As you heard, the Clerk of the Court, Jeff Kaplan, will operate a time signal. Mr. Kaplan will let you know by the signal when there are 5 minutes remaining in your main argument. The purpose of the 5-minute signal is to ensure that there will be time for questions from our panel. As is our practice in the Second District, we have all read your briefs and we are familiar with the facts. What will be different today is that we will not be interrupting your arguments as we usually do. Conducting oral arguments remotely makes that awkward to proceed in that manner. We will save time until the end of your main argument for our questions. Keep in mind you are not required to use all of your time. Certainly, if you complete your argument before the signal, invite us to ask questions at that time. We remind you that no one except the Clerk of the Court is permitted to record the argument. Do either of you have any questions before we proceed? No, Your Honor. Judge, this is Dan Lytle. As I do not have the benefit of a rebuttal time period, is there a preferred amount of time that you would like me to allocate for questions from the panel? Well, that's why we give the signal at 10 minutes and you can wrap up your argument at that point in time. You can use all 15 minutes, but then you would basically run out of time. We won't have an opportunity to ask questions. That's why we give the signal. I'll try to limit it to 10 minutes and then I'll open it up to the panel. Thank you for that clarification. Thank you. Then, Mr. Scapes, you may proceed, sir. Thank you. Good morning, Court, Your Honor, Counsel, may it please the Court. As we know, the trial court granted summary judgment on the basis of proximate cause. The standard of review before us today is the de novo standard. There are numerous cases that were cited by both sides in this case. There are two that stand above the others in terms of being on point that I'll talk about more in depth, and that would be the Radke v. Shalbovitz case and the Blocks v. Lohan-Anostia case. The defendants also point to several cases. Those cases on the surface may seem to support the position advanced by the defendants, but I think as we get into them deeper that there are major distinguishing factors, and as I'll talk about more in a little while, they all fail on the why. They get to the what, but they don't really get to the why, and I'll explain that. In terms of the basic facts, we know that Dawnda Zerbe, the commander of operations for the Fox Lake Police Department, when investigating the scene after the death of Mr. Sheck, she noted the loose board at the top laying across the stairs, as well as the loose stairs themselves near the top. Kenneth Welch, also of the Fox Lake Police Department, a detective and evidence technician, noted the loose step near the top of the stairs, as well as loose planks laying on the stairs. He also testified regarding the positioning of Mr. Sheck's feet, the fact that the feet themselves were up on the stairs, indicating a fall from the stairs, as opposed to just standing on or near the bottom of the stairs. Sarah Pendley, the deputy coroner for Lake County, also testified about loose planks laying on the stairs and loose stairs near the top of the staircase. She, again, mentioned the location of Mr. Sheck's feet found on the staircase. She also testified about the fresh hand wounds, which she believed were the result of the fall. She coordinated with the pathologist and referenced the fact that the death resulted from a broken neck. She indicated she believed that that would require a fall from higher than the location where Mr. Sheck was found. So, again, not simply a fall from that location, but from a higher height. And, in fact, she testified she thought that height would have to be at least halfway up the stairs, or else there would not be enough force to break Mr. Sheck's neck. Renee Sheck, the ex-wife of Mr. Sheck, the last person who had been with him that day, testified that he did not have any wounds to his hands just before he went out the door and before he was found dead. And, thus, the hand wounds that were found were, in fact, fresh wounds that happened at the time of the death. That was important, as there was expert testimony from Dr. Thomas Rudd, a pathologist and former Lake County coroner, who has experience analyzing bodily tissue and bodily fluids. And, of course, investigating deaths. He testified, or he provided in his affidavit, that the hand wound location and type indicated to him that the decedent had fallen from a great height and that these hand wounds were sustained in an attempt to catch himself. He took into account the fact that those hand wounds had not been there prior to the fall, as indicated by Renee Sheck, and gave the opinion that they would have been sustained during the fall in an attempt to catch himself and regain his balance. Dr. Rudd also talked about the force needed to break the neck of a human being and agreed that he needed to have been more than halfway up. In fact, he gave the opinion that the loose boards and loose stairs were precisely the height where he would expect the person to have first lost their balance to have fallen and sustained these fatal injuries. Those are important facts. I know the court's aware of those, but I think it's important to review some of those when analyzing the cases that are on point here. As I said, first we point to the Radke case. In that case, the plaintiff had fallen on a construction site. She had no memory of the fall due to her injuries, and there were no witnesses. There were witnesses only that saw her before and after, but not at the time of the fall. But there was evidence that there was an improperly placed jack handle on the scaffolding, which would have been the only likely object to have caused the fall. The court in that case found that that was enough circumstantial evidence to avoid summary judgment and establish a potential proximate cause. The court also went into detail that proximate cause is normally a question for the jury, which, of course, is our position, that this is a jury issue, not an issue that should be decided as a matter of law, and that the Radke court also said that proximate cause only becomes a question of law when there could be no difference of judgment of reasonable persons on the inferences to be drawn. That's just not the case we have here. There may be counterarguments that can be made, and those would be appropriate for the defendant's closing arguments at trial, but they're not anything that would rise to the standard of as a matter of law. In the Block v. Lohan Associates case, it was also a fall on a construction site where the injury to the plaintiff left him brain damaged and unable to testify. Again, there were no witnesses to the fall itself. There were just witnesses before and after. The allegation by the plaintiff's wife and representative was that he was reaching for a crane line to attach a bosun's chair to an otherwise inacceptable area when he fell from a ladder and that essentially he had been forced to resort to unfaithful construction methods. She concluded that the ball and hook on the end of the crane line must have struck him or otherwise made him fall. Again, this was circumstantial in nature because the coworkers only saw him before and after the fall and couldn't really tie in the specific event of the ball and hook on the end of the crane line actually striking him or doing something to make him fall. The court found that there was enough circumstantial evidence there that while perhaps you couldn't say with absolute certainty what caused Mr. Block to fall, there was ample circumstantial evidence making it more probable than that or at least providing that argument to that plaintiff that during the trial of that case, the fall was caused by the reasons alleged by the plaintiff's wife. Briefly, I want to talk about some of the cases that are cited by the defense. The Kimbrough case, yes, it's a slip and fall case at a grocery store and you may look at that and think it's on point. The problem is the plaintiff herself in that case testified she had no idea why she fell. As I said earlier, that case failed on the why. She can point to where she fell, but she said that the only defense she could even locate was Greece, which she herself said that she didn't contact. There's the Kelman v. Twin Orchard case and in that case, as we recall, the decedent before his death was rendered incapable of speaking, but his son had apparently developed some method of trying to speak to him through a code they developed which the court felt was suggestive and leading, so it wasn't allowed into evidence. Without that, they had no affidavit, and while there was a doctor who testified that the fall was consistent with a slip in the shower, the doctor could not tie in why that individual had slipped in the shower. Similarly, in the Barker v. Eagle food case, the plaintiff testified she fell on a wet floor, but she never saw or felt the water. She just assumed the floor must have been wet because she fell, so again, there's no real evidence in that case as to why the person fell. The Monaghan v. The Pollock Instruction case where a motorcycle accident occurred, again, it's not disputed that there was a motorcycle accident and we know the general area, but there is no evidence as to why. It was merely speculation to say that some problem with the median strip must have caused that motorcycle accident. In the Coquilamidas v. Disco Wheels case, the minor plaintiff testified she didn't know what made her fall while she was on her roller skates. The Strutz v. McCary case, that was a fall on stairs in an apartment. The wife of the injured party said that he told her, I fell down the railing, or I fell down over the railing, and that hearsay statement was allowed as an excited utterance. However, the wife herself testified that in her knowledge, the stairs were in good condition. She had no knowledge of the problem with them. She had never had any issue or complaint. So again, there was no actual evidence suggesting why he fell. Even though there was an expert who was able to testify there was a building code violation, there was nothing tying in whether that building code violation, in fact, made the decedent fall. In the Burke case, Burke v. Manilow, again, the plaintiff fell on the vestibule of an apartment. He had no memory of the incident. There were no witnesses. In that case, the plaintiff went to the extent of getting several experts, virtually all of whom had their testimony stricken by the court as being speculative. The accident reconstructionist and architect, I would say, bear no real parallel to the expert in our case because they don't have the ability to give any testimony regarding proximate cause. They were only competent to testify as to the existence of a defect. Now, there was a doctor expert in that case, as we have in our case with Dr. Rudd, but there's a major difference between the Burke case and our case. In that case, the doctor could only go as far as saying that the abrasions found on Sister Burke were consistent with having fallen, likely the result of a prone fall after a trip. Again, he did not go further and explain why the trip itself happened. In our case, our expert, Dr. Rudd, does opine why and where the fall occurred. He took into account the location of the defects, the rickety stairs and the boards on the stairs, the forces needed to produce the broken net, how high Mr. Sheff would have had to have fallen for that to occur, the positioning of the body when it was found, and the defensive wounds on the hand. That's just much more evidence and much more basis for the opinion as to proximate cause than exists in any of the cases, even the cases we cite on our behalf. I think we just have more than any of these other cases have. Just to speak briefly on a couple of the final issues, the defendant references the intoxication, the defendant referenced the intoxication, Mr. Sheff. Again, as we've argued, I think there's some extent that's just brought up. Yes? I'll wrap up. Okay. It's a comparative fault issue. It ironically brings up the strength of the plaintiff's position because for them to bring in other potential causes, those would only defeat proximate cause as a matter of law if they are just as likely. And based on all the evidence, the positioning of the body, the expert opinion, I think it's far less likely. And I think everybody would agree with that, that he simply fell down drunk for no reason other than the defect there. So by pointing that out, I think they could beat their own claim. And well, with that, I'll turn it over for questioning from the court. And I appreciate the time. Justice Hudson, your questions. Hey, fish. Would you agree that the case law makes it clear that in a premises liability case, the plaintiff must present positive and affirmative proof establishing with reasonable certainty that the defendant's conduct caused the plaintiff's injury. Would you agree that that's a very basic guiding principle here? I would agree that that's a guiding principle, but it's also clear from the case law that the plaintiff does not have to rule out every other possible costs. All right. I understand that. And you've alluded to all the cases. And a summary of the cases, I think would, would make it clear that they highlight the difficulties that a plaintiff has in a case like this, where it's based entirely on circumstantial evidence in the fall was unwitnessed. What I think is primarily important here, and you alluded to Rudd's affidavit that talked about defects. You've talked about some of the officers observing, observing rickety steers, lose boards. But really I think what it comes down to in this case that I think I'd like you to hone in on in the cases seem to turn on whether or not there was another cause that was just as likely to have been the causative factor of the factors. And in this case, I noticed that Rudd never addressed the level of the decedent's intoxication, which as we know was, was extremely high. And all the cases you're talking about when the court upheld the granting of summary judgment, where it noted that there were other factors, the defendant's or the decedent's physical condition in those cases that affected the balance and coordination, which made it just as likely that the decedent's fall was unrelated to the dangerous condition and was a result of the intoxication. Cases seem to turn on that. So how do we overlook the extreme level of the defendant's intoxication as not being a factor? Well, I'm, I'm not even suggesting that it's not a factor, but I think to for the court to rule as a matter of law, that there is not enough evidence for the proximate cause to be a, an issue for the fact finder would suggest that the intoxication or some other reason had to be just as likely. And I think, I think that the defense argument fails on that. There is not only lay testimony as to what the circumstances of the, the premises were at the time of the injury, but there is expert opinion that those particular defects were of the type and in the location to have caused the injury that we see. So I guess my point being, is it conceivable that he simply fell due to his intoxication? Sure. It's conceivable. I don't think that that is as likely as the proposition that he fell due to the defects noted by numerous lay witnesses and tied in to the type of injury that the other physical evidence found on body by the pathologist. And if there's enough to suggest that that is a more likely cause of the fall, then the intoxication would simply be an issue of comparative fault. And that's something that the jury should weigh in rather than the court as a matter of law, taking it out of the hands of the jury. Well, again, if there has to be, you know, positive proof or has to be some level of certainty as the case, let's talk about who established the reason for the fall. I mean, you'd saying, okay, the rickety he could have fallen as a result of the loose boards and the rickety stairs. Tell us why it's not just as likely that he fell because of the level of intoxication had nothing to do with the stairs or the boards. Why isn't that equally a possibility or probability here as much as falling on the boards? Aren't we going into the realm of speculation here? With due respect, I think it would be speculation to arrive at the conclusion because there, there is not an expert opinion that the fall resulted strictly from the level of intoxication. And there is an expert opinion that the factors located at the scene of the incident, uh, combined to cause the incident. Yes. I, and well, his affidavit, and also the sworn testimony of numerous witnesses who were at the scene. But yes, the affidavit would, would certainly be a major factor there. His affidavit in any way, discuss the impact of the decedent's intoxication. I think he just noted that the, uh, that he was intoxicated. He, he, I guess he did discuss it. And one of the important factors is that he found that because of the, uh, the hand wounds that Mr. Sheck must have been conscious and alert as he fell, or he wouldn't have had those hand wounds. That if somebody was so intoxicated to simply fall down limp, that it is unlikely that they would have suffered wounds showing that they tried to catch themselves during a long fall down the stairway. Uh, so he did give that the, the opinion that he was conscious and alert to the type of the fall, which I think cuts against the proposition that it is simply as likely that the fall stem from extreme intoxication. All right. Thank you, Mr. Scapefish. That's all I have. Thank you. Justice Brennan, your questions. I want to go to Dr. Rudd briefly. Do you, do you conceive that Dr. Rudd's opinion allows for the possibility that, uh, Mr. Sheck fell from the steps that are found between the loose planks and  if there are steps between those two defects or hazards where Mr. Sheck could have fallen from according to Dr. Rudd? Right. I guess I know that was brought up also in the response brief. Um, I disagree with the proposition that there is such a difference in the height levels of those two that they wouldn't act in concert. Uh, and I guess my opinion would be that that again would be a question for the jury, whether or not the, any alleged difference in location of those two is enough to make them two completely separate, uh, causes. But I don't think that Dr. Rudd's affidavit leaves for it being something outside of that, because he specifically states in his affidavit that the fall stemmed from the loose stairs, the loose boards on the stairs, or some combination of the two. Um, you know, and as we mentioned in the, in our reply brief, it's not as if he said, I think it was either the loose stairs, or he got startled by a cat or he, you know, he slipped for some other reasons. He gives two and only two reasons, both of which would be a defect under the control of the descendants. And he does not leave for the possibility that it's some reason outside of those two. Uh, and I know that the argument is made by the defense that, well, if he can't say which of the two it is, then he's speculating. And I think that's an unreasonable reading. It would essentially reward the defense for having two separate defects in essentially the same place. Uh, they both make sense within the explanation given by Dr. Rudd. And he ties the two in and he doesn't leave for there being some third or fourth possibility. He identifies those two and only those two, uh, possible defects as the cause of the fall. But are there steps between the two defects? I mean, can we make that assessment from all the different affidavits and the depositions? Are there steps between the two hazards? I don't know that that is definitively established by the testimony that's in the record for the court. Uh, and I think trying to take it a step further and make inferences, there probably is at least a step or so, but how far it is between the two, I don't think is definitively established by the evidence in the record. So again, I think that would be back issue. That would have to be dealt into further at trial and any shortcoming there should be held against the movement asking for summary judgment. Fair enough. One other quick question, and I'm not sure this is totally relevant, but I want to know the answer. I'm trying to visualize this area are the steps that we're talking about. Does Mr. Sheck have to walk on those steps to exit or enter the establishment or are they steps that go into a separate apartment structure? Yeah, I, my understanding is those would be steps that go into a separate apartment structure. Um, again, I would argue for the record that I don't think that clearly established and, and shouldn't be taken into account by the court, but in terms of candidly answering your question, my, my understanding is this is a, an area to the rear of the bar, uh, that patrons are allowed to go use as an outdoor smoking area. And it happens to be that within that is this staircase, uh, you know, so did he have to use it to get into or out of the bar? I don't believe so. All right. Thank you. Um, Mr. Scapes is just to follow up on justice Brennan's question. Uh, it's clear from the record, the stairs led to an apartment upstairs, the bars on the first floor. So, uh, Mr. Sheck was not required to even touch a foot on those stairs in order to go in or out of the bar. Correct. I would agree with that. I guess I would just add that as this, uh, the issue of duty, correct. Right. I mean, those that stairway, you know, the we're kind of treating the, the defendants here as one joint entity, you know, that those were, uh, part of the premises owned and controlled by, uh, carry construction, which, and, and part of the staircase leading to the bar of Donald outweigh. To get back to the issue of cause and effect your, your client, uh, or the deceased, I should say was, uh, according to Ms. Penley and it's a matter of common knowledge, he was in a, a drunken condition, correct? He was certainly, you know, uh, above the legal limit of, uh, the driving vehicle. He, uh, he was, yes, he was intoxicated. It was some testimony. Ms. Penley testified regarding what Renee had said that he left the bar to go vomit and he was cut off by the bartender. Correct. That is correct. With respect to the planks, they were on the side of the stairs, correct? They were laying vertically going up and down the stairs on the side. That's right. That's the way I described on the surface, on the walking surface. So not, you know, beyond the side, but yes. But off to the side. Right. I mean, because there's the, the photographs, there was only one photograph in the record and it's kind of grainy. So I just want to get a picture of it. I, you know, I would take, you know, that's, of course you're taking into account too, that yes, they're on the side, but there were multiple witnesses testified side as to how narrow and steep these stairs were. Um, the, uh, in your brief, you say it's improper for the defense to raise checks, contributory negligence without a formal pleading, but isn't there a formal pleading in the record at the common law record, page 32, that they answer an affirmative defense. They did plead contributory negligence. Did they not as an affirmative? I don't know that they specifically, uh, and I, I, it. Well, that's the way I read it. I am going from member. I don't know if they referenced the intoxication there. If they do, I'll concede that point. I still don't think it is a counter argument at the summary judgment page, unless they have evidence that suggests it is a sole proximate cause. And I don't think they can rise to that level. Uh, Ms. Penley, the deputy coroner said she didn't know what role the plank or little blue stairs played in the fall. Basically all she said is that felony broke his neck from the fall, correct? Uh, yes, I think that's fair. I mean, she, she also said some things about the physical evidence she found a scene and the evidence on the body. Yeah. How is Dr. Rudd's opinion impacted by his failure to even acknowledge sex blood alcohol level in his, uh, affidavit and the effects that it would have had on his condition and his balance? Well, as I stated earlier, I think he does acknowledge it because he says that, uh, he is able to deduce from the hand wounds that Mr. Sheck was conscious and alert as he fell, which says something about the level of intoxication, you know, the difference between somebody who is completely out of it in their drunken state to the point where they can't even try to catch themselves, uh, as opposed to somebody who may be past a certain point of intoxication, but it still has a wherewithal to try to keep themselves from falling down a staircase. Well, we know he was pretty drunk because he left the bar to vomit and he would, the 0.255 is extreme. That's almost non comatose level. Uh, Dr. Rudd doesn't discuss that at all, does he? I, he doesn't discuss that specific level or, you know, how close that would have put him to a comatose level, but I think he definitively states that he wasn't at a comatose level by saying that he was conscious and alert. At least he was awake. Yeah, he was, he was, he was not unconscious when he fell. Uh, Dr. Rudd's opinion was that Mr. Must've fallen from more than halfway or halfway up the stairs in order to have generated enough force to break his neck, correct? Correct. Doesn't that leave open the possibility that Chuck fell from the very top of the stairs without ever having placed his foot on the unsteady steps? He could have reached the finish and then right. I guess if you only read that portion, but I think reading the affidavit in particular states that the loose stairs and loose boards on the stairs were at precisely the height to cause the injuries that he examined. And he goes further by giving the opinion that one or two of those causes were the cause of the fall. So I think reading the entire affidavit takes it out of that explanation. And, you know, that's, that's just one portion of what he says in the affidavit and saying that it would have to be at least that height. I think he may have even used that language because it's consistent with what was already used by Ms. Hendley. In the Radke case that you discussed in your, uh, in your brief, and in your argument here today, um, there were no, uh, impairments in the, uh, plaintiff in that case, correct? No physical impairments. He was actually at work. He was a laborer, correct? Yes. There are no impairments mentioned in that case. I'm aware of. The court honed in on, the appellate court honed in on the fact that there was testimony that the jack handles had been a problem in the past. They had been a problem with being an obstruction on the scaffolding, correct? There had been a problem. According to court, there had, there was testimony that there had been a problem, correct? In other words, people had found those to be an obstacle. Okay. That's all. That's all I have. Thank you. Thank you. Okay. Mr. Lytle. Uh, yes, I'm in court. Thank you for the time. I think I want to first start off with, I know this court is aware of the law, but I think the critical portion, uh, you know, that we need to assess is in a circumstantial evidence case, such as we have here, uh, you know, the, the totality of Illinois law is very consistent and clear that a fact cannot be established like circumstantial evidence, unless those circumstances are such of a nature and so related to each other, that it's not only merely a possible conclusion, but it's the probable conclusion. Um, furthermore, they go further to say the non-existence of a fact to be inferred to the extent it appears to be just as probable as the existence. And that is a conclusion as a matter of speculation can be permitted to go to the jury. Uh, the Keating case, which I cite my brief, you know, speaks of it in a different way that the existence of multiple inferences regarding a factual causation does not create a tribal issue of material fact. Um, I do want to go back and just talk about some of the very, I think important factual issues that we have in this case. All that we know is that Mr. Sheck left the back door and that he was found at the bottom of the stairs. Beyond that, we have no witnesses, uh, to identify any of his activities or behaviors at any time on this set of stairs. Furthermore, uh, you know, contrary to I think some of the assertions made by the appellant, you know, we have no specific information or physical evidence that Mr. Sheck interacted with any specific portion of those stairs. Uh, that's not only just the specific plank that's laying down the side of the stairs and also the loose board at the top. This is any portion of the stairs. Uh, when Ms. Pendley was asked about this in her deposition, uh, she even said, I can't place him anywhere on the stairs. Uh, you know, I can't tell if he was at the top, at the middle, at the bottom. I don't think he was at the bottom because it takes more force than that. But outside of that, all I can tell you is he was intoxicated and I believe he fell, you know, that's it. So to the extent that any of the first responders, um, you know, are alleged to have been able to provide an issue or a allegation of causation, they simply can't. All they could identify was we found him at the bottom of the stairs. Uh, Mr. Rudd, the doctor also, uh, effectively, you know, has the same limitations. He identified no information in his affidavit or from any other source, uh, that Mr. Sheck had actually interacted with any of the hazards or any specific area of the stairs, uh, to even argue or suggest that the wounds were, uh, you know, result of defensive wounds trying to reach out. I mean, Mr. Sheck fell down. He was found with his hands underneath his body, with his palms against his chest and the wounds he identified were on his knuckles. I mean, I think any determination or allegation, uh, of the manner mechanism at any time of the fall is just purely speculation. We simply don't have that. Uh, you know, when we look at the cases that were cited by the appellant in their brief, namely the Radke case and the Block versus Lohan case, you know, we have information from eyewitnesses, both before the incident and after the incident in the Radke cases. Specifically, there's information that the plaintiff had a mark across her foot exactly where the jack handle was. Uh, this panel was correct to identify there was information that the jack handle had been problems before, that she fell precisely in the area of the jack handle and that one witness saw the jack handle down right before the accident. Uh, you know, we have so much circumstantial evidence that the court in that case says, well, that is the more probable reason for the fall. Also, not just because of the evidence we have, it's the evidence we don't have. There was no information of any additional, uh, hazards, uh, or possible issues. There was no identification of any impairment or any physical issues she had that may have contributed to it. All we had was this bevy of circumstantial evidence that led to one, only one probable outcome. Uh, in the Block case, uh, we have a very similar situation. Again, no physical impairment, no other issues identified, but we have three or four different witnesses that placed this gentleman ascending the ladder. Uh, his voice was at a height as to where the chair was. I mean, all the evidence suggests this one probable outcome. In this case, we simply do not have that. We have no information exactly where Mr. Sheck was at the time of this fall. We have no information whether he was ascending the stairs, descending the stairs. We have no information what he was doing. Uh, you know, some of the other cases I cited in my brief, you know, the Keating case, you know, talks about, uh, you know, whether this gentleman was removing or had fallen up against a railing and the court said, well, we just simply don't know. He could have removed the railing first and then fallen or fallen up against it. Uh, it's simply too much to speculate about. In the Burke case, uh, one of the ones that I cited, there was an additional, not only the issues with his, his, uh, own personal health issues. Uh, there was testimony that Mr. Burke had typically walked down the stairs backwards, uh, in Barclay versus Yocum. It's a second district case that I know Justice Burkett, you were on the panel on recently. Uh, there was some testimony in that case that, uh, the gentleman had a habit of sitting on the railway. Um, and, and, and that was a possible cause, you know, any allegation or suggestion as to what exactly happened in this case is absolutely speculation. And when it comes down to that critical analysis that we talked about is, is any one of these situations, any more probable than the others? I just simply don't think so. Uh, you know, what we have is a number of mere possibilities and none reach or rise to the uh, you know, the, the, the panel was correct to single in on the hazards that are identified. Uh, there are several pictures and I apologize. They're, they're not the best and they're grainy, but, uh, page 65, 131, 388, and 765, I think all show basically the same one photograph. But if you look at that, what you'll see is these two planks are on, uh, the stairs that the traverse from about the bottom of the stairs to about halfway up and they are on the side up against the wall. They don't cover all the stairs. Uh, and then there's at least three or four steps I believe where there is no hazard that's been identified by any party. And then we have the top two or three stairs, uh, where there's some physical evidence or some witness testimony that those, one of the treads was loose. So we do have an area that there is absolutely no hazard whatsoever. In addition, uh, you know, those, the planks don't cover the entire stairway. So, you know, what we have is a gentleman somewhere on the stairs and we have no information from any source that he actually interacted with any portion of these hazards in any way. He could have absolutely been standing on a step that contains no hazard. Uh, he could have been doing a number of different things. We simply don't know. And when Mr. Skafish tried to suggest that, well, Dr. Rudd testified that it could have been the loose stair second from the top, or it could have been the planks halfway down and below, or it could have been a combination of the two. I think from a simple analysis that applying this critical case law that suggests that if all possibilities are equal and none rise above that and make any one more probable Dr. Rudd's very own opinions and his different options, so to speak, suggest that he even can't suggest that any one of these rise to the level of probability. Now, Mr. Skafish said, well, I think what we're saying is it had to be the stairs. It wasn't a cat. It wasn't something else. Well, they still have to identify exactly what happened on the stairs. Uh, numerous things can happen while just on a stairs that do not necessarily result in the negligence of a party. If they don't actually interact with one of those hazards, it's their burden to do so, you know, and this cat that he could suggest jumps out. I think the intoxication is a perfect analogy for that. We do have an alternative statement. We do have an alternative possibility. Sarah Pendley, who was a pathologist, uh, came in and she, she identified the BAC level of 0.255 and based on her testimony experience, she suggested and testified that not only could this cause someone walking on a flat surface to fall, it would cause major motor sensory impairment and she specifically testified it could have been the sole cause of this accident. We're not injecting this just as a matter of contributory fault and it was improperly played as a preferred defense. By the way, what, what this suggests is it's no more possible than any of the other ones. I mean, these, these all options are all equally possible. Uh, none rise to this probable level. And because of that, we don't have the ability and nor does the jury have the ability to render a verdict, uh, that one of the hazards that was identified on that staircase was the proximate cause of this injury. And for those reasons, that's why this must fail. Um, you know, and I, I do want to talk about Dr. Pendley or Dr. Rudd's testimony. You know, plaintiff has gone at lengths to suggest that because he is a medical doctor, uh, and he is identifying not only the, the, some elements of the forces necessary and, you know, how, how the medicine works out. Uh, he's able to then extrapolate that out into a Y scenario. Well, first off, I don't think that his ability to suggest a Y scenario is appropriate unless he's going to consider the intoxication as a wholly independent possible cause of this incident. But what we see in all the other cases that I've cited is there is numerous other cases where there has been a medical opinion, the Burke case, there was a medical opinion that discussed the forces involved. And in that case, they said, well, we understand what you're saying that the, that the medicine can suggest, you know, the nature of the force and the type of the force, but it doesn't tell us exactly what happened. Uh, same thing in the Kelman case, also in the stress case, you know, we, we have medical testimony that's suggesting this is a head first fall, or this is a trip style fall. But until we, the courts have said, we appreciate that you can suggest that you can make that medical opinion. Very quick until you have relevant evidence to link up the Y to one of the hazards. You have not met your birth. I'll open it up to the, to the corporate now. Justice, that's a new questions. Just a couple of questions. Mr. Lytle to tie your argument into the well-settled principles for granting a summary judgment motion. As we know, the case law makes it clear that summary judgment is considered to be a drastic means of disposing of litigation. Therefore, only when the right of the moving party is clear, clear, clear, and free. Also holds it a tribal issue precluding summary judgment exists where the material facts are disputed or where the material facts being undisputed reasonable persons might draw different inferences from the undisputed facts or some loose boards, a rickety staircase. The decedent is highly intoxicated. Are there different inferences that can be drawn? Does that preclude summary judgment? I think there are different inferences that can be drawn and I'm not suggesting that, but I think if you look at what the cases suggest is it's the plaintiff's right to get beyond and advocate one of those as the more probable. And I think that what we see the distinction from perhaps a Radke case or a block case. And what I've cited in Burke and Kelman and struts in Keating is, you know, when those inferences are absolutely equally possible and not one can, can based on just an analysis of anyone couldn't rise to a level of probable, you know, we can't even take that to the jury because then they can only speculate against that. And the jury shouldn't be, it should not be entitled to speculate between one or five different scenarios unless any one of those are a, you know, our star, I would say is there is sufficient evidence to suggest that they are a probable cause. So while I agree with the statement of law, I think they also then have to have each of those elements must meet a certain level of probability such that the jury could even assess that. Thank you. That's all I have. Justice Brennan. I just, I don't know that this is particularly germane to the issue ultimately, but at the beginning of your argument, you seem to suggest that we can't even put him on the stairs at the time of the fall. I don't think the evidence could seriously support that kind of an argument. I mean, he fell from some kind of a height. And if, as I understand it is portions of his legs or his feet are on the stairs, he's facing down and unless he crawled backwards after the fall onto the part of the stairs, that makes no sense. So I just want to be clear. You're not actually seriously arguing that he was not on the stairs at the time of the fall, or are you? No, sir, I'm not. And I apologize. It may have been a, you know, either I was not clear over the phone or what I was citing was Sarah Pendley's deposition where, where she effectively, her testimony was, I can't place him on the stairs. And I read that and I agree that that's in there, but I mean, I was not making that today. No, I think there is what he felt. I agree. He was on the stairs when he fell. And I think what we don't know is exactly where on the stairs he was even assuming. And if we assume that we accept the halfway up marker or, you know, or greater, we still don't have any evidence that he interacted with the hazards and that those hazards caused the fall. You know, what we have is just a location, at least halfway up where there are areas within that second section, you know, from halfway up to the top where there are no hazards or where the hazards are to one side of the stairs and absent any additional information as to what he was doing, how he interacted with the stairs, what, you know, how his body was moving. We just can't reach to the level of the causal relationship that is necessary. All right. Thank you. All right, Mr. Lytle. What about the lighting? Was there lighting on the staircase? Was, was there lighting? In other words, was it so dark that no one could have safely used the stairs? No. If you look at Sarah Penway's deposition, she discussed the lighting and advised there was some natural light. She was able to reverse the stairs without a flashlight. Now she did use a flashlight. I think to take some of her photos to highlight that. But I don't think anyone has suggested that it was so dark that you couldn't see anything. In fact, I think she said she was able to easily identify the two planks that were there and avoid them. So I don't think that there's an issue with lighting. It's been identified by anyone as a specific causal factor in this. Would you agree that the plaintiff does not have to show that the defendant's negligence was the sole cause of the accident, only a cause? I agree that it only has to show it's a cause, but we don't have any information that's even a cause. Any, any suggestion of that would be based on pure speculation. And that's, I think ties into the first question I was asked is, you know, isn't it part of the jury's responsibility to assess factual disputes? And yes, they are, but in order for it to be a cause that a jury can assess and make a determination on, it must rise to a level beyond mere and pure speculation. And I think that's what the cases talk about in this circumstantial evidence case. It's difficult when that's what we must rely upon. But in those cases, we must have enough, enough evidence of a circumstantial nature to put this in a, in a situation where it's beyond just a possible occurrence. Well, you take Dr. Blood's opinion and Pendley's testimony that they believed he was on the stairs. Couldn't the jury reach a conclusion that it's most likely the checks intoxication, plus the condition on the stairs both contributed to his fall. Couldn't a jury conclude that? I think that they would be required to speculate. They would be required to speculate. We know he was intoxicated. I mean, that's the factual statement that it is not in dispute. What we don't know is did Mr. Sheck actually interact with those portions of the stairs that the plaintiff suggests that, you know, we're,  That's what we don't know. Absent any physical evidence, absent any testimony evidence that he was in that area or interacted with those areas that rises speculation. So I think the jury, based on the facts that we know and have been established, could without speculating, believe that it was a result of intoxication alone in order for them to assess one of the hazards and believe that it was even a contributing factor under our approximate cause laws. They would be required to absolutely speculate that he interacted with any of those things. We simply do not have that in any form or fashion, whether it be testimony evidence or physical evidence. Okay. Thank you very much. Rebuttal. Thank you. I won't spend time belaboring too much of what we've already talked about, but just to, to respond to some of what's been raised. Council said, well, is any possibility really more likely than the others? And I think the simple answer to that is yes. The conditions on the stairs, not only because they were identified by multiple lay witnesses, but also because they were tied together by competent expert testimony, which stands unrebutted at this point. So I do think that is the more likely reason. Are there other possible reasons? Yes. And that's why there'll be a trial for a fact finder to make that determination. Okay. Council says it's plaintiff's burden to advocate. One of the reasons is more probable. Well, that's exactly what's going on here. And it's not just simply the lawyers making an argument. There is expert testimony as to which of the reasons that have been potentially raised is the more probable reason here. A lot of attention was given to the testimony of Sarah Pendley. And yes, she was asked the question, you know, could a person at that level of blood alcohol simply fall on a flat surface? And she did answer in the affirmative, but I think taking into account for actual testimony that she's simply answering a hypothetical question there, that it is possible for that to happen to a person who's that drunk. Because if you read the rest of her testimony, she also says that he had to have fallen from a great height to sustain the event. And she takes it a step further and says that she believes that the loose stairs and planks on the stairs actually caused the fall. I mean, she essentially does a pine to causation. That's a paid 1053 to 1065 in the record. So to characterize her as a basis for saying, well, she didn't know, it could be this cause it can be that crime. I mean, she told you what she did think was the cause. And she didn't actually say that she thought it was just as likely that he fell down drunk. In fact, she identified why that wouldn't have been the case location of the feet and the height that would have had to be in play for him to sustain that type of injury. And I agree with the, the state provided court that yeah, a jury could easily conclude that it was a combination of these factors. They might find that the intoxication played a role and that also the stairs played a role. And contrary to what council says, that that would be inviting them to speculate. The plaintiff has provided testimony, the physical evidence from the witnesses that was observed at the scene and an expert conclusion qualified based on experience and, and his investigation, the matter to tie up why one of the reasons is more probable than the others. It will then be the jury's job to analyze that, but it's not inviting them to speculate. In fact, I think at this point it would be inviting the jury to speculate, to suggest that the fall resulted from intoxication because while there may not be any serious disagreement that he was intoxicated, there isn't any qualified expert opinion that his fall resulted simply from intoxication. If there were a competing expert of just as much reliability and consequence, maybe that would be a different argument. But right now, I think it would be simply engaging in speculation to say that the intoxication alone was just as much of a cause. There are just numerous issues that persist that would preclude summary judgment. Cause is typically something that should be sent to the jury. And I think this is one of the cases where that's what needs to happen. The Mr. Sheck heirs deserve their day in court to, to prove their case over the unfortunate death at issue here. And I thank the panel again for your time. Thank you. Justice Hudson, anything else? No further questions. Justice Brennan, anything else? No. Thank you. Well, the court thanks both parties for your arguments today. We thank you for participating in oral argument remotely. The case will be taken under consideration. A written decision will be issued in due course. The court stands adjourned for the day. Thank you. Thank you.